IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS J. COLBERT, )
)
    Plaintiff, )
)
        v. ) Civ. A. No. 1:16-cv-01790
)
FEDERAL BUREAU OF INVESTIGATION, )
*et al.,* )
)
    Defendant. )
)

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)      I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this

position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"),

from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for

Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA")

policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30,

2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA

matters. I am also an attorney who has been licensed to practice law in the State of Texas since

1980.

(2)      In my official capacity as Section Chief of RIDS, I supervise approximately 249

employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ")

units and two (2) field operational service center units whose collective mission is to effectively

plan, develop, direct, and manage responses to requests for access to FBI records and

information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the

OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential,

Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and

Congressional directives.   The statements contained in this declaration are based upon my

personal knowledge, upon information provided to me in my official capacity, and upon

conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to plaintiff's request for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

Specifically, I am aware of the FBI's handling of plaintiff's FOIA request to FBIHQ, seeking

access to records concerning "D. B. Cooper" skyjacking incident of 1971.

(4)     This declaration will provide the Court with the FBI's rationale for its policy of

reviewing 500 pages per month and is submitted in support of the FBI's position in the

December 1, 2016 Status Report and Proposed Schedule, wherein Plaintiff is objecting to the

portion of the FBI's proposed production schedule concerning the amount of time it will take the

FBI to process over 37,000 pages of potentially responsive records, at 500 pages per month.

(*See* **ECF Docket Number 12.**)

## HISTORY OF PLAINTIFF'S FOIA REQUEST

(5)     By email dated July 11, 2016, Thomas J. Colbert, by and through his counsel,

Bradley P. Moss, submitted a FOIA request letter dated July 12, 2016 seeking access to "all

records created, received, and/or maintained by the Federal Bureau of Investigation ("FBI") that

constitute the FBI's investigative file of the 'D.B. Cooper' skyjacking incident of 1971.   The

2

request indicated that it was reasonably likely that FBI Headquarters, the FBI field office in Seattle, Washington, as well as Resident Agencies in Washington and Oregon currently retain responsive records. Lastly, Colbert's counsel requested a waiver of or, at a minimum, a reduction in fees. He further advised that in the event fees are ultimately assessed and will exceed $25.00 to contact his office first for authorization. *(See Exhibit A.)*

(6)     By letter dated July 15, 2016 the FBI acknowledged receipt of Thomas J. Colbert's request and assigned it FOIPA Request Number 1354232-000. The FBI advised it was searching the indices of its Central Records System ("CRS") for information responsive to the FOIA request. Additionally, the FBI stated it was considering his request for a fee waiver and would advise of its decision at a later date. *(See Exhibit B.)*

(7)     On September 8, 2016, Plaintiff filed a Complaint in the United States District Court for the District of Columbia, claiming the FBI failed to provide a substantive response within the twenty (20) working days, thus he has constructively exhausted all required administrative remedies. *(See ECF Docket Number 1.)*

## EXPLANATION OF THE FBI'S PROCESSING POLICY

(8)     On or about January 2010, RIDS instituted a policy of processing 500 pages per month on CD for medium- and large-queue requests (hereinafter referred to as the "policy"). The FBI's policy derives from and/or is the FBI's effort to comply with DOJ FOIA regulations at 28 C.F.R. § 16.5(b) (regarding prompt disclosure of responsive material upon payment of any applicable fees). The rationale for the FBI's policy concerning the processing of 500 pages a month is three fold.[1]

---

[1] The District Court for the District of Columbia ruled in favor of the FBI's policy of issuing 500 pages per CD for

(a)    First, the policy is based on sound FOIA business practice.    FOIA encourages agencies to develop multi-track processing with the goal of responding to more requests.    Accordingly, the FBI uses a four-track system as a way to fairly assign and process new requests.[2]    This "multi-track" processing system sorts requests based on the amount of time and work involved in handling a particular request.[3]    In order to ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act requests received by the FBI on an annual basis, a request is labeled as either a "simple"[4] or "complex"[5] request.    This standard operating procedure, coupled with the FBI's "first in, first out: policy, permits RIDS to address requests in the order in which they were received, while simultaneously obviating the inequities to those requesters whose interests relate only to a small number of documents.

(b)    Second, the policy promotes both RIDS and requester efficiencies.    RIDS processes responsive records in 500-page increments, meaning 500 pages are reviewed for release, once all security protocols are run (see ¶ 8(c) *supra)*, a CD is prepared, and an interim release is mailed to the requester.    Then, the next 500 pages are reviewed and prepared for release.    This process continues until all responsive pages are reviewed and released.    By working in 500-page increments, RIDS has found that more pages get processed, reviewed, and

---

medium- and large-queue requests.    *In re: National Security Counselors et al. v. Department of Justice*, 1:13cv-00556-TSC, Docket Entry No. 27 (D.C. Feb. 18, 2015).    The Court's decision stands for the persuasive proposition that RIDS relies on a 500 page per month workflow to ensure it can meet its FOIA obligations to all requesters and not sacrifice finite resources for large-queue requesters who could dominate resources at the expense of all others. The decision is currently being appealed.

[2] This system went into effect on July 6, 2015, and replaced the previous three-track system utilized by the FBI.
[3] See 5 U.S.C. § 552(a)(6)(D)(i) and 28 C.F.R. § 16.5(b).
[4] A FOI/PA request that an agency anticipates will involve a small volume of material or which will be able to be processed relatively quickly.    "Simple" requests are cases containing 50 pages or less.
[5] "Complex" requests typically seek a high volume of material or require additional steps to process such as the need to search for records in multiple locations.    "Complex" requests are divided into three processing tracks:    50 pages or less = "small track;" 51-950 pages = "medium track;" 951-8,000 pages = "large track;" and 8,001 or more pages = "extra-large track."

released to more requesters each month.   In terms of managing work-flow, the interim releases can be assigned to multiple processors and the 500-page size has proven to be ideal for reviewing officials, subject matter experts, and other components or agencies that must be consulted before release.   Moreover, maintaining a steady interim release posture is key in meeting the demands posed by the growing number, size, and complexity of FOIA/PA requests received by the FBI.

        (c)      Third, the policy enables the FBI to maintain proper information security. Many FBI records contain classified information requiring the FBI FOIA/Privacy Act requests to be processed on a classified computer network.   Thus, when a CD is prepared for release after review and consultation, it must also undergo a multi-step information security review. Specifically, the FBI employs a security software application ("Integrity") that must be utilized every time information is taken from the classified network and released to a requester in an unclassified format.   This entails running a general security protocol, whereby Integrity scans for prescribed code words; and an individualized protocol, whereby Integrity scans for words that RIDS determines are unique to the particular request and may include searches for specific exempt words, names, confidential sources, or classified techniques.   Due to the security requirements, the 500-page size has proven ideal in maintaining a steady release flow.   The running of these security protocols, and resolving any issues that may arise, requires more effort and time as more pages are added; therefore, putting more pages on each CD would impose additional security protocol burdens and slow processing time.

        (9)      In RIDS's experience, the 500 pages per month workflow size has proven ideal as it allows for a steady flow of information to the public at large.   The 500-page incremental size

5

enables a manageable monthly production rate because it allows for the processing of the material by an analyst, review time, and the application of FBI information security protocols that must be followed before FBI information can be made public.

(10)    All three of the above-mentioned factors work together to form the basis of the FBI's policy.  In addition to this policy, there are other factors affecting the FBI's ability to process plaintiff's request at an accelerated rate.  Those factors are explained in detail below.

### FACTORS AFFECTING THE PROCESSING OF PLAINTIFF'S REQUEST

#### A.    *Volume and Complexity of Requests*

(11)    In 2009, as a result of new Department of Justice guidelines, the average size of an FBI FOIA/Privacy Act request jumped from 500 to 1,000 pages, in effect doubling the work required to complete a request.  The FBI responded by funding 35 contract employees to assist the FOIA program.  Ever since, the numbers of FOIA/Privacy Act requests received fluctuates.

(12)    At the end of FY 2011 the number of pending requests was only 1,179.  In FY 2012, the FBI received a total of 20,602 FOIA and Privacy Act requests, or an average of 1,716 requests per month.  In FY 2013, the FBI received a total of 20,754 FOIA and Privacy Act requests, or an average of 1,730 requesters per month.  In FY 2014, the FBI received a total of 17,867 FOIA and Privacy Act requests, or an average of 1,489 requests per month.  In FY 2015, the FBI received a total of 17,244 FOIA and Privacy Act requests, or an average of approximately 1,437 requests per month.  In Fiscal Year 2016, the FBI's Record/Information Dissemination Section received a total of 22,222 FOIA and Privacy Act requests, or an average of approximately 1,852 requests per month.  This statistical information shows the fluctuating trend of FOIA requests received by the FBI in general.  The FBI's efforts contributed to a slight

6

decrease in the amount of requests received between FYs 2012-2015; however, for FY 2016 an increase is evident.  Nonetheless, despite the fact that the FBI continues to process these requests in the most efficient manner, the amount of pages still pending is significantly high at approximately 5.19 million pages.

(13)    The FBI's FOIA workload today is dramatically more complex and significantly more demanding than it was five, let alone ten or more years ago.  Of equal or greater importance to understanding the FBI's position is an appreciation for the nature and complexity of the requests the FBI has been receiving in the last several years.  The FOIA/Privacy Act landscape has changed dramatically, and responding to these requests has demanded a significant increase in FBI resources, time, and effort when compared to previous years.

(14)    Over the past several years, requests have grown significantly larger and more complex.  Many of the requests which the FBI receives today are no longer simple, relatively straightforward, first-party requests from individuals seeking investigative records about themselves, *e.g.*, a request for a single bank robbery file.  Rather, many of the requests contain numerous and/or multi-faceted subjects and often significantly more responsive pages per request than in previous years.

(15)    The total number of pages responsive to a request proportionally impacts – and dramatically affects – the complexity of the FOIA processing required as well as the resources and time needed to respond to a particular request.  The FBI's experience is that as the number of pages in a request increases, the work and complexity associated with responding to a request proportionally increases as well, including the number of referrals (for either consultation or direct response) to other DOJ components and agencies, the need for internal reviews,

7

declassification considerations, and the time associated with page-by-page, line-by-line, word-by-word review of all potentially responsive material to determine what can be released and/or withheld.   Thus, the RIDS employs a work-flow policy of 500 pages per month reviewed, see ¶ 18, *infra.*

### B.  Litigation Demands

(16)     Besides the demand posed by the complexity and significant volume of requests, there is a constant litigation demand imposed by those requests that become the subject of judicial complaints.   At the close of FY 2013, RIDS had a total of 146 pending litigations.   The number increased to 160 in FY 2014.   In FY 2015, RIDS had 180 pending litigations imposing their own unique demands on the finite resources of RIDS.   Currently, RIDS has 223 pending litigations, representing a tremendous increase of 41% more FOIA litigations in the course of one year.   Further exacerbating this increase in pending litigations, the litigations themselves have mirrored the trend seen in the FOIA requests recently received by the FBI – they have increasingly become larger and more complex. Examples of these larger/more complex litigations include, but are not limited to:

(a)     *Ryan Shapiro v. DOJ, Civ.* A. No. 12-cv-0313 (DDC) - The FBI is currently processing responsive pages in this litigation (approximately 300,000 pages).   The FBI made its first periodic release on or about February 9, 2015.   The FBI will continue to make periodic releases until the court-ordered deadline of September 2017.[6]

---

6 There is not a required monthly page count for the releases in this case.   The case involves a complex matrix of inter-related investigations, extensive coordination, and multi-layer reviews.   As a result, it was determined that a monthly rate could not be predicted, only an end date.   This allowed the FBI to adjust its resources as it found most efficient for the processing.

(b)    *Barbara Webster, et al. (on behalf of Carl Ogelsby) v. DOJ*, Civ. A. No. 02-cv-603 (DDC) – Subject:  Ernest Withers.   The FBI is currently processing 500 pages per month (a total of 5,673 total pages) until processing is completed per a settlement agreement between the parties.

(c)    *Memphis Publishing Company, et al. v. FBI*, Civ. A. No. 10-cv-01878 (DDC) – The FBI is currently processing 500 pages per month (a total of 5,673 total pages) until processing is completed.

(d)    *ACLU v. DHS, et al.*, Civ. A. No. 16-cv-00221 (DDC) – The court approved the FBI's 500 reviewed pages per month of approximately 3,000 pages proposed.

(e)    *Brennan Center for Justice at New York University School of Law v. DHS et al.*, Civ. A. No. 16-CV-00672 (SDNY) - The court approved the FBI's 500 reviewed pages per month of approximately 3,000 pages proposed.   The FBI is currently handling records referred to it from Department of Homeland Security.

(f)    *Nolen v. FBI, et al.*, Civ. A. No. 15-cv-05062 (EDPA) – Pursuant to an agreement between the parties, the FBI is currently reviewing 500 pages per month and there are approximately 1,361 pages remaining to process which is approximately three (3) additional months of processing time.

(g)    *Leslie James Pickering v. DOJ*, Civ. A. No. 14-cv-00330 (WDNY).   The FBI is currently reviewing material monthly and is releasing non-exempt material to plaintiff every 120 days, with a Court-ordered completion date of December 2017.   Due to the pending nature of the records being processed, the FBI is unable to reveal the actual amount of pages

involved, as it would undermine the FBI's litigation position by revealing the scope of the pending investigation.

(h)    *James Madison Project v. DOJ, et al.,* Civ. A. No. 16-cv-00514 (DDC) – Subject: FBI's investigation of General David Petraeus.   The FBI is currently processing 500 pages a month and there are approximately 43,000 pages.

(i)    *Viola v. DOJ, et al.,* Civ. A. No. 15-cv-00242 (WDPA) – The FBI is currently processing 2,000 pages at 500 pages per month.

(j)    *EFF v. DOJ,* Civ. A. No. 15-cv-03791 (NDCA) – Subject:   CODIS/Rapid DNA.   The FBI is currently processing 500 pages per month as agreed to by the parties.   There are still approximately 8,000 pages pending processing.

(k)    *James Madison Project, et al. v. DOJ, et al.,* Civ. A. No. 16-cv-00227 (DDC) – Subject:   FBI's investigation of John Kiriakou – The exact page count is still undetermined, but estimated to be several thousand pages.   The completion of processing deadline is February 28, 2017.   Additionally, the FBI has received a large referral of documents from the EOUSA in this case.   The exact number of pages for this referral is undetermined but it is approximately 4,000 pages.

(l)    *Freedom Watch v. FBI, et al.,* Civ. A. No. 16-cv-01755 (DDC) – Subject: FBI's investigation of Hillary Clinton's server.   The FBI is currently evaluating the litigation position it will adopt in this litigation.   However, the FBI is processing records about the FBI's investigation of Hillary Clinton in response to multiple administrative FOIA requests.   Some of these records are also potentially responsive to this litigation.   Due to the high public interest in this subject, the FBI is placing the processed records on its public FOIA Vault.   The exact

10

numbers of pages involved is still undetermined, but estimated to be in the thousands.    The FBI
projects to review 500 pages per month.

      (m)    *James Madison Project v. DOJ, et al.,* Civ. A. No. 16-cv-00116 (DDC) –
Subject:  Thomas Andres Drake – The FBI is currently processing responsive records at a rate
of 500 pages reviewed per month as agreed to by the parties.    There are still approximately
4,030 pages pending processing.

      (n)    *Judicial Watch v. DOJ,* Civ. A. No. 16-cv-0655 (DDC) – Subject:
Muhammad al-Hanooti.    The FBI is currently processing at a rate of 500 pages reviewed per
month as agreed to by the parties.    There are still 2,863 pages pending processing.

      (o)    *Judicial Watch v. DOJ,* Civ. A. No. 16-cv-00475 (DDC) – Subject:
Adnan Gulshair el Shukrijumah (senior leader of Al Qaeda and wanted in the U.S. on charges of
plotting to bomb several Western targets, including the New York City subway system).    The
FBI is still evaluating its litigation position in this case.    The FBI has already released 253 pages
and is aware of the existence of additional records located in an investigative file that is subject
of pending investigations.    Due to the pending nature of these records, the FBI is unable to
reveal the actual number of pages involved, as release of this information could interfere with the
FBI's litigation position; however, the FBI can state that this processing involves a high volume
of records. The FBI search for records in this case has not been finalized.    Consequently, the
amount of responsive pages may potentially increase.

      (p)    *Jeffrey Stein v. DOJ,* Civ. A. No. 13-cv-00571 (DDC) - The FBI is
currently processing approximately 11,000 pages.    Despite plaintiff's request to the Court

asking for a processing schedule of 3,000 pages per month, the Court ordered the FBI process the records in 20 months. This equates to 550 pages per month.

(q) *Jason Leopold, et al. v. National Security Agency, et al.,* Civ. A. No. 15-cv-00999 (DDC) –This is an 83-part FOIA request. The FBI administratively divided the request into 30 separate FOIA numbers. Each FOIA request covers multiple consolidated subjects. The FBI has already responded to 77 of the 83 subject items. The additional six (6) subjects are being processed. The Court ordered the FBI to provide a response the second Wednesday of each month with no set page count. The number of pages being released each month varies.

(r) *Guardian News and Media Limited v. DOJ,* Civ. A. No. 16-cv-1869 (DDC) – Plaintiff submitted 18 new FOIA requests comprising 319 individual subjects, most of which relate to individuals, organizations, websites, addresses, files, and other matters associated with protests of Keystone XL Pipeline. The requester seeks cross-reference searches now in addition to the main file searches previously conducted for a similar request previously submitted by the requester. The FBI is currently in the initial processing/search phase for this request and anticipates an extraordinary amount of resources will be necessary to comply with the request.

(s) *Seavey v. DOJ,* Civ. A. No. 15-cv-01303 (DDC) – The request sought records concerning 378 subjects. The FBI is processing 500 pages per month.

(t) *Martinez v. DOJ,* Civ. A. No. 16-cv-01506 (DCO) – Relates to 319 requests with approximately 60,000+ pages. The request is not currently being processed, however, when processing begins this request will increase the FBI's already heavy burden.

12

(u)    *Rosenfeld v. DOJ,* Civ. A. No. 16-cv-01154 (NDCA) – The FBI is processing 500 pages per month.   There are approximately 3,509 pages to be processed.

### C. Finite Resources and Workflow Management

(17)    Besides the increase in volume and complexity of requests and litigation demands, it is difficult for RIDS to adhere to and comply with the FOIA's statutory and regulatory requirements for processing records in a manner equitable to all requesters.   The same personnel who work to comply with numerous litigation deadlines are the same individuals working on the administrative FOIA requests, referrals, and appeals.   As such, any raise in litigation related processing means a commensurate reduction of records processing in response to requests from other citizens who chose not to litigate.   This fact requires a careful balancing of resources and priorities among both litigation and administrative requests.   To achieve an equitable program balance and maintain its statutory obligation to all requesters, for requests in medium and large queues seeking releases in CD format, RIDS employs a work-flow policy of 500 pages per month reviewed.[7]   This standard work-flow policy is a sound business practice that provides more information to more requesters and litigants across all processing queues-- regardless of queue size--thereby preventing a system where a few requesters in large queues can monopolize RIDS's finite resources at the expense of requesters in smaller processing queues. Moreover, the standard work-flow policy promotes both agency and requester efficiencies.

## PROPOSED PROCESSING SCHEDULE

(18)    Due to the volume of work generally faced by RIDS, with respect to administrative matters and other litigation cases, in conjunction with the FBI's processing policy

---

[7]   Plaintiff's request is a large queue request as it is in excess of 37,000 pages.

and the total volume of records associated with the processing of plaintiff's request, the FBI is requesting a processing/review rate of 500 pages per month. The requested production rate falls in line with the FBI's policy and will allow RIDS the time necessary to process and release all non-exempt records responsive to plaintiff's request.

## CONCLUSION

(19)    The FBI has determined that altering its policy to suit the personal preferences of plaintiffs, or any of the thousands of other requesters seeking information from the FBI, would not be feasible or efficient. It would disrupt RIDS's ability to process the high volume of requests that are received in a manner that is most beneficial for FOIA requesters as a whole.

(20)    The FBI has carefully balanced the volume of responsive records along with plaintiff's interests, while also recognizing and preserving the rights of other litigants and requesters in accessing information they seek. As detailed above, the extremely high volume of other administrative and litigation-related FOIA /Privacy Act work being handled by RIDS and the serial nature of FOIA/Privacy Act processing pose an exceptional demand on RIDS's finite resources. The FBI assesses that it can address both this demand and plaintiff's interests through the above-articulated processing policy.

(21)    The FBI takes very seriously its responsibilities with regard to the administration of the FOIA/Privacy Act program. All reasonable efforts are being made to timely process requests at the administrative stage and those in litigation, including plaintiff's FOIA request.

14

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of December, 2016.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS J. COLBERT,                          )
                                            )
        Plaintiff,                          )
                                            )
            v.                              )   Civ. A. No. 1:16-cv-01790
                                            )
FEDERAL BUREAU OF INVESTIGATION,            )
*et al.*,                                   )
                                            )
        Defendant.                          )
                                            )

# EXHIBIT A

**Sobonya, David P. (RMD) (FBI)**

| | |
|---|---|
| **From:** | Bradley P. Moss, Esq. <brad@markzaid.com> |
| **Sent:** | Monday, July 11, 2016 11:26 PM |
| **To:** | FOIPARequest |
| **Cc:** | 'Mark Zaid' |
| **Subject:** | FOIA request |
| **Attachments:** | FBI FOIA request-complete.pdf |

Mr. Hardy –

Please find attached a FOIA request submitted on behalf of our client, Thomas J. Colbert.

Regards,

Brad Moss

---

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is addressed. It contains confidential information that may also be legally privileged. Any copying, dissemination or distribution of the contents of this e-mail by anyone other than the addressee or his or her agent for such purposes is strictly prohibited. If you have received this e-mail in error, please notify me immediately by telephone or e-mail and purge the original and all copies thereof. Thank you.

Bradley Prescott Moss, Esq.
Associate Counsel
Mark S. Zaid, P.C.
1250 Connecticut Avenue, NW, Suite 200
Washington, DC 20036
C: (202) 907-7945
F: (202) 555-4432

JUL 1 4 2016

1

# MARK S. ZAID, P.C.
### Attorney-At-Law

1250 CONNECTICUT AVENUE, N.W.
SUITE 200
WASHINGTON, DC 20036

---

TELEPHONE: (202) 454-2809
FACSIMILE: (202) 330-5610

MARK S. ZAID, MANAGING PARTNER (admitted in CT, DC, MD, NY)
    E-MAIL: MARK@MARKZAID.COM
BRADLEY P. MOSS, ASSOCIATE (admitted in DC, IL)
    E-MAIL: BRAD@MARKZAID.COM
ILANA S. GREENSTEIN, OF COUNSEL (admitted in DC, MD)
    E-MAIL: ILANA@MARKZAID.COM

July 12, 2016

**VIA E-MAIL**

David M. Hardy
Chief
Record/Information Dissemination Section, Records Management Division
Federal Bureau of Investigation
170 Marcel Drive
Winchester, VA 22602-4843

Dear Mr. Hardy:

This is a request on behalf of Thomas J. Colbert ("Mr. Colbert") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* This FOIA request seeks a copy of all records created, received, and/or maintained by the Federal Bureau of Investigation ("FBI") that constitute the FBI's investigative file of the "D.B. Cooper" skyjacking incident of 1971. It is reasonably likely that FBI Headquarters, the FBI field office in Seattle, Washington, as well as Resident Agencies in Washington and Oregon currently retain responsive records. The scope of the search should include cross-references.

The definition of "records" should be interpreted to include, but not be limited to, e-mails, facsimiles, and text messages that originated on mobile devices. Furthermore, the scope of the search should not be limited to FBI-originated records and should be construed to include records that are currently in the possession of any U.S. Government contractors for purposes of records management.

For historical context, the "D.B. Cooper" incident occurred on November 24, 1971. *https://www.fbi.gov/about-us/history/famous-cases/d.b.-cooper-hijacking* (last access July 11, 2016). It remained an open and unsolved FBI case until July 11, 2016. *http://dbcooper.com/* (last accessed July 11, 2016). Following the completion of a two-part investigative series on The History Channel on July 11, 2016, the Special Agent in Charge of the Seattle, Washington, FBI Field Office stated that the FBI was administratively closing the case.

Mr. Colbert is pre-emptively waiving any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. Mr. Colbert similarly waives any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

In terms of all other third parties who work or worked for the U.S. Government and whose names appear in records responsive to this request, Mr. Colbert submits that the privacy interests of those individuals have been diminished by virtue of their involvement in U.S. Government functions. There is a recognized inverse relationship between the position of authority that a government employee holds and the strength of that employee's privacy interests. See Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984); Jefferson v. Dep't of Justice, 2003 U.S. Dist. LEXIS 26782, *11 (D.D.C. Nov. 14, 2003); see also Perlman v. Dep't of Justice, 312 F.3d 100, 107-109 (2d. Cir. 2002)(setting forth five factors to consider in weighing government employee's privacy interests against public interest in disclosure, including employee's rank and whether information sheds light on a government activity).

The work performed by these third parties (whether they be Government officials or contractors) was part of their official responsibilities on behalf of the U.S. Government and was not of a personal nature. They served in a position of trust and authority to, among other things, conduct an investigation into the skyjacking incident, as well as identify and (ultimately) rule out potential suspects. Given that responsive records memorializing the work they performed will shed light on government activity spanning four decades, explaining among other things how the FBI's assessment of the skyjacking and the likely skill sets that "D.B. Cooper" needed to have evolved over the years, it would be reasonable to conclude that the relevant third parties' respective (and diminished) privacy interests are outweighed by the public interest in disclosure of the information indexed to their name.[1]

For similar reasons, Mr. Colbert is requesting a waiver of or, at a minimum, a reduction in fees. At a minimum, Mr. Colbert qualifies for designation as a representative of the news media.

Mr. Colbert is a community-affairs specialist for law enforcement and public safety agencies, as well as a former senior media executive with nearly four decades' worth of experience in the media industry. Exhibit "1" (bio); Exhibit "2" (article); http://dbcooper.com/about/ (last accessed July 11, 2016). According to 5 U.S.C. § 552(a)(4)(A)(ii),

> the term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

Mr. Colbert can demonstrate his intent and ability to publish or otherwise disseminate information to the public. See Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989). Specifically, he just published a book detailing the entirety of the investigation

---

[1] We acknowledge, of course, that some redactions or narrowly focused withholdings might ultimately be appropriate as FBI processes the responsive records.

he led into finally identifying "D.B. Cooper" and which was the subject of the aforementioned-investigative series on The History Channel. *https://www.amazon.com/Last-Master-Outlaw-Outfoxed-Times--but-ebook/dp/B01I21S3XO/ref=sr_1_1?ie=UTF8&qid=1468293042&sr=8-1&keywords=colbert+tom* (last accessed July 11, 2016). Mr. Colbert intends to update and re-publish that book after receiving and reviewing the FBI's investigative file. In the event that fees are ultimately assessed, do not incur expenses beyond $25 without first contacting our office for authorization.

If you deny all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. We request that any documents or records produced in response to this request be provided in electronic (soft-copy) form wherever possible. Acceptable formats are .pdf, .jpg, .gif, .tif. Please provide soft-copy records by email or on a CD if email is not feasible.

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at (202) 907-7945 or via e-mail at brad@markzaid.com.

Sincerely,

/s/

Bradley P. Moss

# EXHIBIT 1

## THOMAS J. COLBERT
**Corporate Bio**

Founder of TJC Consulting, Colbert has been a rotating trainer and community-affairs specialist for law enforcement and public safety agencies for more than three decades. He is also a former senior media executive, with 36 years of management and editorial experience in the national news, TV entertainment, publishing and motion-picture fields.

**CommStatim (CS):** In 2009, Mr. Colbert launched a service to provide crisis-management and media-liaison services to those with a badge or uniform. CS helps departments turn their emergency incidents and criminal-justice cases into news and entertainment stories that emphasize integrity, lessons learned and public service. And at no cost to the agencies involved. The 40-member Cold Case Team was assembled through CS.

**Industry R & D, Inc. (IRD):** Since broadcasting began, national radio and TV networks have routinely snatched headlines from small-town papers and news stations without compensating or crediting the local journalists that broke them. Mr. Colbert reversed this divisive practice in 1992 by launching IRD – a middleman story service that forwarded these breaking ledes to buyers in the national media. Each year, his staff would relay thousands of the best true tales to subscribing TV editors, publishers and producers in New York, Hollywood and media centers around the globe. In return, the regional reporters who tipped them received cash cuts from every sale. And under Colbert's leadership, without one civil suit.

More than two dozen of these local news tips became books, with a like number reaching the big and small screens – such as the 2012 feature, *The Vow*, starring Rachel McAdams (involving a car-accident survivor with amnesia); a 2013 HBO series pilot script order, *Deep* (cases from the USA's #1 undercover hitman); and the 1994 TV movie, *Baby Brokers*, starring Cybill Shepherd (surrogate fraud case involving LAPD and US Attorney). Mr. Colbert sold IRD in 2009 after 17 years as the company founder and CEO.

**CBS & Paramount Television:** Mr. Colbert began his professional career in 1980 with a journalism internship at the CBS flagship news station in Los Angeles, KCBS. Hired during college, he worked his way up to Senior Researcher. Dozens of breaking exclusives garnished his station team regional Emmys and Golden Mike awards, especially during major emergency coverage. In 1989, Mr. Colbert was recruited by Paramount Studios to become a Story Editor for a syndicated TV news magazine show. Two years later, he departed to take the position of Coordinating Producer for two reality programs featuring recreations of dramatic police & fire incidents.

**California Specialized Training Institute (CSTI):** Between his news assignments, Mr. Colbert served as a disaster-preparedness instructor at various police, fire and military academies – including 18 years at CSTI, the state's renowned emergency management school at Camp San Luis. Thousands of professionals attended his monthly presentations covering terrorism, natural disasters, disinformation, hazardous materials and media-relations training (1983 to 2001).

Mr. Colbert is a graduate of the award-winning Journalism Department at Cal State University, Northridge. He is married with two children and resides in Ventura County, California.

**DOCS/MOVIE/SERIES DEVELOPMENT STATUS**
As of May 19, 2016

*Since 1990, dozens of true tales broken nationally by Producer Tom Colbert have been put into story development at the studio, networks and publishing houses. Nineteen have become movies on the big and small screen, many to his direct credit. Among them:*

*TBA* – Confidential Project;  2016 documentary, book, scripted limited series; tipped 2015)*

*"Deep"* – Jack Ballentine Story (eOne Entertainment/HBO; 2013 Series Pilot Script Order; tipped in 2009)*

*"The Vow"* – Carpenters Family Story (Spyglass Ent./Screen Gems; 2012 Feature, 2002 Book; tipped in 1996)*

*"The Unexpected Patriot"* – Shannen Rossmiller Story (Palgrave/Macmillan; 2011 Book; tipped in 2004)*

*"Catch Her If You Can"* – Esther Reed Story (Braun Ent. Group/Lifetime; 2012 Script Order; tipped in 2007)

*"Inside the DEA"* – Heidi Herrera/Green Ice Story" (AuthorHouse Pub; 2006 Book release; tipped in 1993)

*"Snapped"* – Kristin Rossum Story (Jupiter Ent./Oxygen Network; 2004 Doc Series Episode; tipped in 2000)

*"Date with Darkness"* – Andrew Luster Story (Larry Thompson Org.; Lifetime aired 2003; tipped in 2000)

*"Snow Angels"* – Aniak Fire Dept. Story (Lions Gate Ent./PME; 2002 Series Pilot Option; tipped in 2001)*

*"Princess & Marine"* – Meriam Al-Khalifa Story (Columbia TriStar-PME; NBC Movie aired 2001; tipped 2000)*

*"One Angry Man"* – Jim Thomas Story (Angel Ark-Vision/Showtime; 2001 Movie Script order; tipped in 1998)*

*"Bully"* – Bobby Kent Story (Muse Films/Lions Gate Films; 1998 book, 2001 Feature; tipped in 1993)

*"Never Let Her Go"* – Anne M. Fahey Story (Greenwald/Lieberman; CBS Mini-Series aired 2001; tipped 1997)

*"Boys Don't Cry"* – Teena Brandon Story (Hart-Sharp Ent./Killer Films; 1999 Feature; tipped in 1994)

*"Lethal Vows"* – Dorothy Boyer Story (Braun Ent. Group; CBS Movie aired 1999; tipped in 1993)

*"Judgment Day"* – Ellie Nesler Story (Jaffe/Braunstein; USA Network aired 1999; tipped in 1993)

*"Fatal Transcript"* – Wade Burnett Story (Producers Ent. Group/ABC; 1998 Movie Script rewrite; tipped 1993)*

*"A Father For Brittany"* – Keith Lussier Story (Grossbart/Barnett; CBS Movie aired 1998; tipped in 1994)

*"Dark Family Secrets"* – Dawna Kay Wells Story (Dick Clark Prods.; CBS Movie aired 1997; tipped in 1990)*

*"Lies He Told"* – James Douglas Pou Story (Jaffe/Braunstein Prods.; ABC Movie aired 1997; tipped in 1992)

*"Forbidden Love"* – Steve & Kim Williams/Marines Story (Avnet-Kerner/ABC; 1996 Script order; tipped 1995)*

*"Fly Away Home"* – Bill Lishman Story (Sandollar/Carol Baum Prods/Sony; 1996 Feature; tipped 1993)

*"Angel Flight Down"* – Samantha Bahr Story (Carla Singer Prods.; ABC Movie aired 1996; tipped 1994)

*"For the Future"* – The Irvine Fertility Scandal (Lavin Entertainment; Lifetime Movie aired 1996; tipped 1995)

*"Seduced By Madness"* – Diane Borchardt Story (Pike Prods.; NBC Mini-Series aired 1996; tipped 1994)

*"No One Could Protect Her"* – Denise S-Calla Story (Rothstein/Hearst; ABC Movie aired 1996; tipped 1993)

*"Baby Brokers"* – Debbie Freeman Story (Dalrymple/Columbia TV; NBC Movie aired 1994; tipped in 1990)*

*"Separated By Murder"* – Peggy Wilson/Betty Lowe Story (LTO; CBS Movie aired 1994; tipped 1993)

*"Juice – The OJ Simpson Tragedy"* – Murder, Arrest & Trial (Globe Books; 1994 release; tipped 6/13/94) *

*"Snowbound"* – Stolpa Family Story (Jaffe/Braunstein Prods.; CBS Movie aired 1994; tipped 1993)

*"Lacey Brown"* – Det. Lacey Brown Story (Scherick & Associates/ABC; 1993 TV-pilot script order)*

*Entertainment Projects developed by Colbert's producer-partners.

# THOMAS J. COLBERT
### -referrals-

## MEDIA, ENTERTAINMENT, INTERNET & WIRELESS COMMUNICATIONS:

Exec Producer Susan Zirinsky -- CBS 48 Hours-NY: 212-975-6472
Senior Producer Teri Whitcraft, Law & Justice Unit -- ABC News-NY: 212-456-7124
Assignment Manager Steve Bien -- Tribune TV-LA, KTLA News: 805-428-5441
Movie Producer Paul Taublieb -- LA (2012 Spyglass/Sony Feature Film, *The Vow*): 310-403-8144
TV Movie Exec Producer Joey Plager -- LA (1994 NBC Movie, *Baby Brokers*): 310-722-2072
Writer/Producer Barry Bortnick -- CO (17-year IRD Story "Tipster" and Author): 303-995-7269
News Director Jose Rios (ret.) -- FOX TV-LA, KTTV News: 213-514-4816

## LAW ENFORCEMENT, INTELLIGENCE, INVESTIGATIVE, FIRE/RESCUE:

Polygrapher/Profiler Jack Trimarco, FBI (ret.) -- Beverly Hills, CA: 310-991-3054
Special Agent David Hoffman, US Secret Service/Ventura Resident Office: 805-233-0934
Richard F. Vigna, Director of Field Ops/Pacific, Customs & Border Protection: 415-592-4876
Sheriff Geoff Dean -- Ventura County Sheriffs Dept.: 805-654-2417 or 9511
Commander Monica McGrath -- Ventura County Sheriffs Dept.: 805-340-7423
PI John Bocciolatt (Portland, OR; former PPB Detective-Sgt.): 315-777-5157
Dep. Fire Chief Jack Ballentine -- Phoenix Arson Squad/Ex-PD Homicide: 602-908-7074
Instructor Frank Cowan (ret.) -- CA Emergency Management Agency/CSTI: 805-459-7619
Investigator Dan Horan -- Ventura County District Attorney's Office: 310-433-1539
Senior Inv. Jon Campbell -- South Carolina Law Enforcement Div. (SLED): 803-608-7284
MT State Inv. Shannen Rossmiller, former FBI Cyber-Counterintel Asset: 406-417-1446

## LEGAL:

Atty. Mark Zaid, DC (criminal justice/intelligence/military law): 202-454-2809
Atty. Michael B. London, Beverly Hills, CA (E & O): 310-474-0577
Atty. Bill Jacobson, LA, CA (entertainment law): 310-446-9900

Thomas J. Colbert, Executive Producer
866-778-5669; cell: 805-350-4079
ConsultTJCC@gmail.com



The liaison for leading authorities



CONSULTING

# EXHIBIT 2

 

**Photos L to R:** Actors Channing Tatum and Rachel McAdams at Hollywood premiere with the couple they portrayed, Krickett and Kim Carpenter; true-story producer Tom Colbert

# Local producer helps bring 'The Vow' to screen

## Ventura County Star, 2/12/12; Reporter Mark Storer

http://www.vcstar.com/news/2012/feb/11/camarillo-producer-helps-bring-vow-to-screen/

Some reality shows aren't just about fame and fortune.

Kim and Krickett Carpenter's saga, which hits screens this month, is such a story. It took Ventura County resident Tom Colbert, an associate-producer on the film, some 15 years to bring their movie, "*The Vow*," to life. It stars Rachel McAdams, Channing Tatum, Sam Neill and Jessica Lange.

Colbert first read about the Carpenters in 1996. As a former researcher for the CBS news division and story editor at Paramount Television, Colbert has become known for marrying unique true-life news events and feature articles with filmmakers who might turn the tales into movies or series.

The NBC film, "*Baby Brokers*," came from Colbert, as did "*The Princess & Marine*" and 17 other TV and big screen features. He's currently an exec-producer on an HBO series pilot being scripted called "*Deep*," based on the undercover hitman career of Phoenix Detective Jack Ballentine.

Kim and Krickett Carpenter were married in 1993. Shortly after their marriage, Krickett was in a car accident that left her with a brain injury and no memory of her husband or their marriage. But Kim did not give up on his wife. Ignoring suggestions by social workers and others that he divorce Krickett and get on with his life, he stayed by her side and cared for her for months – even though she saw him as nothing more than a total stranger.

Then Kim courted and proposed all over again. The couple were remarried in 1996 and now have two children, Danny, 11, and LeeAnn, 8...

# The News Man

## *By connecting a cadre of international reporters to the American media machine, Tom Colbert forever changed the business of news.*

## By Joan Trossman Bien
## Ventana Magazine, Vol. 2  No. 10, March, 2008

The next time you watch television news, you will likely see the results of Tom Colbert's work.

1

His company, Industry R&D, Inc. (IRD), searches out compelling news from America's smallest towns and then gets the stories out to the rest of the country within hours.

To understand IRD, imagine a creature, perpetually in motion, powered by computers and phones, with 600 arms attached to it. The arms are small-town reporters, each transmits stories to the massive head—the editorial staff of IRD, which distills more than 100 ideas a day down to the very best. "There really aren't more than 20 top stories a day," says Colbert.

The top tipster leads are then sent to 45 major league clients who pay to be plugged into the head—and that is how the obscure yet fascinating stories of Smalltown, U.S.A., find their way to the big time: network television news, news magazine shows, movies, books, and magazines.

IRD contacts the top network operatives, film producers, and publishers on a daily basis. "My staff loves it because every day is different," Colbert says. "One day you're working on a rescue story, the next day you're working on medical technology, the next day a movie, the next day a women's magazine story, the next day a child hero. There are never two days that are alike."

Tom Colbert is a curious mix of a person. He is, first and always, the newsman. He is efficient, curious, demanding, and result-driven. But Colbert favors the casual style of Hawaiian shirts and sandals, a look that belies the sharp business acumen simmering below the surface. Humble about the genesis of the 1992 company, he credits his wife with his success. "Fortunately, I had just married a beautiful woman, the subject of one of my stories," he tells me. "She had the smarts."

The news pipeline that Colbert created changed the nature of the biz for countless small-town reporters. The biggest change is tipsters now get a piece of the action. Indeed, the historical lack of financial reciprocity between the major media and regional sources is what prompted Colbert to strike out on his own, after many years at CBS news and Paramount Studios.

"Everybody in the national news business in New York and Los Angeles is guilty of ripping off the local reporters," Colbert says. "I came up with a concept that if somebody could organize this army of journalists and send their leads through one person, and then cut them in on any national story sale, they would be very loyal."

The idea worked, and Colbert's original army of 150 has ballooned to 600 news sources around the world, including some funneling tips through an IRD office in New Zealand. "It's very competitive to become an IRD source," Colbert explains. "We're still the only middleman service for small-town reporters."

In Denver, Barry Bortnick, a print reporter with 20 years experience, is one of Colbert's news sources and book authors. "I have known Tom and the gang at IRD for 15 years," Bortnick says. "Tom knows the media like no one else, and he works his butt off for his clients and friends."

On the other end of his business are the clients who pay for the service. They rely on IRD's efficiency and honesty.

Susan Zirinsky is executive producer of CBS's "*48 Hours*." Producing up to three shows a week, her time is at a premium. And she can't afford to waste it with predators trying to make a fast buck, often from another's misfortune. "There are these people called story brokers," Zirinsky explains. "I have found dealings with some of them to be grotesque." In contrast, she is comfortable working with IRD and Colbert. "IRD is just a clean group of reporters," she says. "Everything is above board."

That opinion is echoed by other clients, including Nash Entertainment's Debra Weeks, the executive producer of TruTV reality shows. Weeks has known Colbert since college, and calls him a "straight shooter."

2

IRD is also involved in developing books, TV movies and feature films based on the story tips—more than a dozen have wound up on the big and small screen.

Joey Plager was the executive producer of an NBC movie titled *Baby Brokers*, starring Cybill Shepherd. It was based on a Los Angeles news story, broken by Colbert, about a deceitful mother and father selling their unborn babies to desperate, childless couples. Plager also had a good word. "Tom has a really great nose for stories that entertain as well as educate," he says, "and he's a fun guy to work with."

"What I enjoy most is being there first," says Colbert, summing up his infatuation with the breaking news business. "It's like watching the future unfold from the front row..."

# IRD Offers Real Reality

### *Network of reporters provides tips that become the stuff of stories*

**Broadcasting & Cable Magazine; Vol 131, #9; Feb. 26, 2001; Susanne Ault**

Industry R & D, Inc. (IRD), a news research/entertainment company and one of the producers behind last week's NBC movie, *The Princess and the Marine*, is in high demand for more of its real-life tales.

Last June, IRD lifted the veil on the nation's most successful drug informant, Andrew Chambers, and has since nabbed a development deal to craft a two-hour series pilot based on his life, called *The Snitch*.

The company has established relationships with about 500 print and TV reporters who are paid a freelance fee every time a story tip they provide leads to bigger things — like a segment on a network news magazine, a book project or the production of a movie.

"We've always been fortunate to have such a great network of professionals that have a pulse on breaking stories," says Tom Colbert, IRD president and one of the executive producers of *Princess*. "Hollywood has grown to know IRD as the place to get access first. Our reporters are close to the victims and witnesses, close to their attorneys and close to the cops."

ABC's *20/20* broke the Chambers story based on an IRD lead, and Showtime is now developing it as *The Snitch*. In total, Colbert says a dozen TV movies and feature films — examples include the big screen release *Boys Don't Cry* and USA cable's *The Ellie Nester Story* — began with his news tipsters.

"Truly, if it hadn't have been for Tom, we wouldn't have had this story," says *20/20* anchor **Connie Chung.** Her show's report on Chambers explored how the Drug Enforcement Agency used the informant to arrest 445 dealers and seize $6 million in drug assets over 15 years. The tale, Chung says, "was particularly meaty."

With writers and actors strikes looming, IRD will have plenty of work coming its way, as networks increase their prime time news holes. If the strikes occur, the company "is going to have to help us. **"We'll be producing more," predicts *20/20's* Chung. "We'll be on a great search for stories. And Tom has always been hot on the news..."**

3

# LOVE IN A HOT CLIMATE

**Duncan Campbell, London, UK; 07/17/2000**

It had everything a film studio could dream of: a clean-cut hero and an exotic heroine, love across the divide, a great escape, desert sands and sinister foreigners. It was Romeo and Juliet meets Desert Storm. It was Runaway Bride meets Lawrence of Arabia. It even has a cliff-hanger ending which is still due to unravel.

He was a 25-year-old US Marine lieutenant corporal called Jason Johnson, serving with the US Navy Fifth Fleet. She was a 19-year-old Bahraini princess called Meriam Al-Khalifa who had taught herself English. When their eyes met last year in a shopping mall in Manama, the capital of the Gulf state Bahrain, it was love in a hot climate. Her family discovered the courtship and she was confined to her home, but continued the romance by telephone. Then the couple decided to flee and make their lives together in the USA.

Immigration officials wanted to deport her immediately as an illegal immigrant. She asked for asylum, claiming that if she returned to Bahrain, her life would be in danger. She was eventually paroled into the United States, granted a hearing, and allowed to remain while she awaits her fate.

From the time of their arrival last November until last month, the world was unaware of the story. But the couple decided they needed the public on their side, so they went to the media.

Since then, a skillful operation to ensure that the couple's tale receives maximum news coverage and makes it to the movie screens has been taking place. A key player in this is Tom Colbert, the president of Industry Research and Development, Inc. (IRD) -- a company that promotes stories produced in local papers by placing them on TV and in national newspapers and magazines. An exclusive network of 550 local journalist-tipsters from across the country feeds Colbert his breaking news leads each day. Since 1992, IRD's staff has developed over 10,000 stories – more than a dozen have become films...

# Feeding our hunger for compelling stories

## *Company firm turns local occurrences into events that become known across the country, and around the world.*

### By Alfred Lubrano, Philadelphia Inquirer Magazine; October 5th, 1998

OK, so there's this mutt in San Francisco who finds an abandoned baby, and then it turns out the dog was once abandoned himself. Great story. Let America hear it. Or, equally compelling, about the neighbors who scrape together $250,000 to buy the home of a pedophile and say to the guy, "Sell us your house or we'll burn it."

Wild stuff. Absolutely verifiable stories which ran on TV or in newspapers. Both of which were brought to the nation's attention by Tom Colbert of Industry R&D, Inc. (IRD).

Americans love a story. And story is what Colbert does.

4

Essentially, he's a story broker, culling news leads sent in from 550 small-town newspaper and TV reporters all over the country, then stockpiling the tales and offering them to 50 national media outlets.

His stories have even made it into the movies. The 1996 box-office hit *FLY AWAY HOME* started as an IRD-generated story. And other developing film projects (*THE VOW* and *GREEN ICE*, tentatively starring Michelle Pfeiffer) also came from reporter-tipped tales recycled by IRD -- a tiny cluster of six people, eight computers and nine file cabinets in a nondescript suburban office, 20 miles west of Los Angeles.

"Probably once a month, if not more often, we produce a story for a German TV network that IRD generated," says Russ Ptacek, president of NewsTV Corp. in Kansas, which produces stories for television worldwide. Sometimes big media organizations are reluctant to admit that they use the IRD reporter pipeline to help collect stories. "They need to maintain an image," Ptacek explains, "essentially saying, 'We don't need anyone outside our own little army.' " But, he adds, "IRD is being used at the highest level of network news and entertainment programming."

Heather Vincent, senior coordinating producer for NBC's Dateline, doesn't argue the point. She says that her program has used three stories submitted by IRD this year...

# The Only Story That Tom Colbert Hasn't Gotten: His Own



## CITYSCAPES / BOB POOL; February 26, 1994

Hey, Tom Colbert: Check out this story!

It's got everything you look for in a newspaper article: Romance, drama, violence, and a happy ending. The makings of a dynamite TV piece could be hidden here. Maybe even a best-selling book or a movie of the week. Who knows?

If anybody knows, it's Colbert. He spends his days searching the country for small-town stories that can be turned into big-time films and television show segments - mostly newspaper reporters - keep him supplied with tales of mischief and mayhem from their hometowns.

Eighty-two of the story leads have been identified as potential books. And 18 of them have been placed with producers as movie-of-the-week development projects, according to Colbert. Better yet, film producers and publishers using the service have agreed to let the local tipster have a crack at writing the script or book manuscript if a movie or book deal develops. That means most informants do not have to be prodded for story ideas.

"There are a lot of books there," said book agent Bill Birnes, who is negotiating with one publisher for 10 of the stories and with another for five more.

Producer Daniel L. Paulson, one of five filmmakers who subscribe to the tip service, said it gives him a jump on other reality-based network movie makers. "It's like having 50 or 75 people across the country finding me stories. They find things that haven't been on the wires yet," he said.

One of Colbert's news tips - about a child-adoption scam - became last Monday's NBC movie, "Baby Brokers," starring Cybil Shepard, according to executive producer Robert Dalrymple...

## ##

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS J. COLBERT,                              )
                                                )
        Plaintiff,                              )
                                                )
               v.                               )   Civ. A. No. 1:16-cv-01790
                                                )
FEDERAL BUREAU OF INVESTIGATION,                )
*et al.,*                                       )
                                                )
        Defendant.                              )
                                                )

# EXHIBIT B



U.S. Department of Justice

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 15, 2016

MR. BRADLEY PRESCOTT MOSS
MARK S ZAID, P.C.
SUITE 200
1250 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20036

FOIPA Request No.: 1354232-000
Subject: D.B. Cooper Skyjacking

Dear Mr. Moss:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI.

☑     Your request has been received at FBI Headquarters for processing.

☐     Your request has been received at the _____ Resident Agency / _____ Field Office and forwarded to FBI Headquarters for processing.

☑     We are searching the indices to our Central Records System for the information responsive to this request.   We will inform you of the results in future correspondence.

☐     The subject of your request is currently being processed for public release.   Documents will be released to you upon completion.

☐     Release of responsive records will be made to the FBI's FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑     Your request for a fee waiver is being considered and you will be advised of the decision at a later date.   If your fee waiver is denied, you will be charged fees in accordance with the category designated below.

☑     For the purpose of assessing fees, we have made the following determination:

     ☐     As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

     ☑     As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

     ☐     As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check for the status of your FOIPA request at www.fbi.gov/foia by clicking on **Check the Status of Your FOIPA Request** under **Records Available Now** located on the right side of the page.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.   Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:   https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division